**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

GEORGE I. ROUMELIOTIS, CHAPTER :     CIVIL ACTION NO. 26-cv-00396
7 TRUSTEE FOR THE NASH : 
ENGINEERING COMPANY, : 
                                   : 
v.                              :     **PLAINTIFF DEMANDS JURY TRIAL**
                                     : 
ALLSTATE INSURANCE COMPANY, : 
INDIVIDUALLY AND AS SUCCESSOR- : 
IN INTEREST TO NORTHBROOK : 
EXCESS AND SURPLUS INSURANCE :     MARCH 17, 2026
COMPANY, : 

**COMPLAINT**

Plaintiff George I. Roumeliotis, Chapter 7 Trustee for The Nash Engineering Company, by

and through his undersigned counsel, for his Complaint against Allstate Insurance Company,

individually and as successor-in-interest to Northbrook Excess and Surplus Insurance Company,

alleges as follows:

## I.    NATURE OF ACTION

1. This is an action for damages for breach of contract, for a declaratory judgment, and

for other relief.

## II. PARTIES

2. The Debtor, The Nash Engineering Company ("TNEC" or the "Debtor"), is a

Connecticut corporation with a principal place of business at 73 South Street, Freeport, Maine.

3. On October 19, 2021 (the "Petition Date"), TNEC filed a voluntary petition pursuant

to Chapter 7 of the Bankruptcy Code (U.S. Bankruptcy Court, D. Conn., Case No. 21-50644).

4. On October 20, 2021, George I. Roumeliotis was appointed as the Chapter 7 trustee (the "Trustee") of the Debtor's bankruptcy estate.

5. The Trustee has the right to bring and prosecute this action against Defendant, pursuant to 11 U.S.C. § 704(a)(1), and is the proper party to bring and prosecute claims against third parties such as Allstate Insurance Company, individually and as successor to Northbrook Excess and Surplus Insurance Company.

6. Upon information and belief, the Defendant Allstate Insurance Company is the successor-in-interest to Northbrook Excess and Surplus Insurance Company, with whom TNEC had a contract of insurance ("Northbrook" or "Defendant").

7. Upon information and belief, Defendant is incorporated in Illinois, has a principal place of business at 2775/3100 Sanders Road, Northbrook, Illinois, and is licensed to sell insurance in the state of Connecticut.

### III. JURISDICTION AND VENUE

8. This Court also has jurisdiction pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between the Trustee and the Defendant and the amount in controversy between the parties exceeds $75,000.

9. Defendant is subject to personal jurisdiction in this District, pursuant to Conn. Gen. Stat. § 52-59b(a), because it transacts business within the State of Connecticut and therefore should reasonably have expected that its actions would have harmful consequences in the State of Connecticut.

10. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)-(c), in that a substantial part of the events or omissions giving rise to the claims occurred here, and 1409(c).

## IV.    FACTUAL ALLEGATIONS

### A.  TNEC's Business

11.  Founded in 1905 by Lewis Nash, TNEC was a manufacturer of liquid ring vacuum pumps used for vacuum steam heating systems, vacuum sewage collection systems, and to manufacture pulp and papers. TNEC's manufacturing business operated continuously from 1905 through 2002, when that operating business was transferred.

12.  Although the operating business was transferred in 2002, TNEC continued to exist thereafter and held various assets from time to time including real estate, life insurance policies and general liability insurance policies.

13.  Since at least 1991, TNEC has been a named defendant in thousands of asbestos-related lawsuits throughout the United States in which claimants allege bodily injuries and wrongful death arising from exposure to asbestos contained in TNEC's products (the "Asbestos Claims").

14.  Over the course of time, more than 8,000 Asbestos Claims were brought against TNEC throughout the United States many of which were defended and resolved by certain of TNEC's liability insurers.

15.  According to the Debtor's Statement of Financial Affairs filed on November 2, 2021, at the time that TNEC filed for bankruptcy, TNEC remained a party to over 1,600 asbestos-related cases pending throughout the United States.

16.  Although no deadline has yet been set for filing of proofs of claim in the bankruptcy case, more than 2,100 proofs of claim for TNEC Asbestos Claims have been filed in the bankruptcy case as of the filing of this Complaint.

17. The Trustee expects that more proofs of claim asserting Asbestos Claims against TNEC will be filed through the end of the bankruptcy case.

B. **The Northbrook Insurance Company Policy**

18. In or about January 1978, Northbrook Excess and Surplus Insurance Company sold to TNEC an "Umbrella Liability Policy," Policy Number 63 004 121 (the "Policy"), for the period January 13, 1978 to January 13, 1979 (the "Policy Period") with aggregate limits of $5 million.

19. As part of its insuring agreement, Northbrook promised to "indemnify the Insured for all sums which the Insured shall be obligated to pay by reason of the liability … for damages on account of : (i) Personal Injuries …."

20. The Policy defined "Personal Injuries" to include "bodily injury (including death at any time resulting therefrom), mental injury, mental anguish, shock, sickness, disease [and] disability."

21. The Policy provided that Northbrook was responsible to indemnify TNEC "for ultimate net loss," which was defined to include sums paid "by reason of personal injuries … either through adjudication or compromise, and … also … expenses … for litigation, settlement, adjustment and investigation of claims and suits …."

22. For the period January 13, 1978, to January 13, 1979, TNEC also purchased a primary general liability policy from Hartford Accident and Indemnity Company that provided coverage for "bodily injury" with limits of $500,000 per occurrence and $1,000,000 aggregate (the "1978 Hartford Primary Policy").

23. As pertains to the Asbestos Claims, Northbrook's responsibility to indemnify TNEC under the Policy did not begin until ultimate net loss during the Policy Period exceeded the limits of the underlying 1978 Hartford Primary Policy – $1,000,000 in the aggregate.

24. The Policy further provided that "[i]n the event of reduction or exhaustion of the aggregate limits of liability under [the 1978 Hartford Primary Policy] by reason of losses paid thereunder, this policy subject to all of its terms and conditions, shall … in the event of exhaustion continue in force as underlying insurance."

25. It was a condition of the Policy that TNEC maintain in full effect during the Policy Period the 1978 Hartford Primary Policy; however, the Policy provided that TNEC's failure to maintain the 1978 Hartford Primary Policy "shall not invalidate this policy but in the event of such failure, [Northbrook] shall only be liable to the same extent as it would have been had [TNEC] complied with the said condition."

26. Upon information and belief, TNEC paid the premium for the Policy and fully complied with the Policy's terms.

## C. **Demands That Northbrook Provide Coverage For The Asbestos Claims**

27. The Asbestos Claims allege injuries that fall within the Policy's definition of Personal Injuries.

28. Many, if not most, of the Asbestos Claims allege "bodily injury" as a result of exposure to asbestos contained in TNEC products during the Policy Period.

29. Beginning in 1991 and continuing until the Petition Date, the defense and indemnity of the TNEC Asbestos Claims was provided by several TNEC primary and umbrella insurers.

30. Prior to the bankruptcy, TNEC submitted to Northbrook historical information about the handling of the TNEC Asbestos Claims, including information about settlements paid since 1991. This historical information established that indemnity for the Asbestos Claims paid by TNEC's other primary and excess insurers, when allocated *pro rata* to the Policy Period according to Connecticut law, exceeded $1,000,000 and thus triggered coverage by Northbrook under the

Policy.

31.  Prior to filing for bankruptcy, TNEC submitted to Northbrook copies of pending complaints and demanded that Northbrook provide it with payments for defense and indemnity in those lawsuits, as Northbrook was required to do under the terms of the Policy.

32.  Through the Petition Date, Northbrook failed or refused to pay any defense costs or fees or to indemnify TNEC for any settlements paid to resolve any Asbestos Claims despite Northbrook's obligation to do so under the terms of the Policy.

33.  Since the Petition Date, additional Asbestos Claims have been filed as proofs of claim in the bankruptcy case and the Trustee expects that many more will be filed through the end of the bankruptcy case (likely several years into the future), nearly all of which will likely allege bodily injury within Policy Period and for which Northbrook is obligated to provide coverage under the terms of the Policy.

## COUNT I

### Breach of Contract – Duty to Indemnify

1-33.  The Trustee repeats and realleges paragraphs 1-33 above as if fully recited herein.

34.  Pursuant to the terms of the Policy, after TNEC's other primary and excess insurers paid $1,000,000 attributable to the Policy Period, Northbrook was obligated to pay promptly to TNEC its proportionate share of the cost of defending and settling the Asbestos Claims up to the aggregate limits of the Policy.

35.  As a result of Northbrook's refusal to promptly indemnify TNEC for its losses in the Asbestos Claims, Northbrook has breached its contractual obligations as set forth in its Policy.

36.  As a result of Northbrook's breaches of contract, TNEC has been and will be damaged, including but not limited to sums due under the Policy.

## COUNT II

### Declaratory Judgment – Duty to Indemnify

1-36.  The Trustee repeats and realleges paragraphs 1-36 above as if fully recited herein.

37.  Northbrook has refused to promptly indemnify TNEC for its losses in the Asbestos Claims, and disputes its obligation to do so as set forth in its Policy.

38.  Northbrook's actions have caused and will cause substantial damages to TNEC's bankruptcy estate.

39.  As a result of the foregoing, an actual and justiciable controversy currently exists between the Trustee, on behalf of the TNEC bankruptcy estate, and Northbrook with respect to Northbrook's obligations under its Policy.

40.  A declaratory judgment of the rights and responsibilities of the parties under the Policy is appropriate and necessary.

41.  The Trustee seeks a declaration that: (a) payments made by TNEC's other primary and excess insurers for settlements of Asbestos Claims, when allocated *pro rata* according to Connecticut law, satisfied the Policy's requirement that $1,000,000 in ultimate net loss attributable to the Policy Period be paid before the Policy was triggered and (b) as of the date of the payment of that $1,000,000 by TNEC's other primary and excess insurers, Northbrook was obligated to pay its proportionate share of ultimate net loss incurred by TNEC in the Asbestos Claims up to the $5,000,000 aggregate limits of the Policy.

## DEMAND FOR RELIEF

**WHEREFORE**, the Trustee respectfully requests judgment as follows:

I.    On Count One, that this Court award the Trustee:

    a.  Damages;

    b.  Interest;

    c.  Costs; and

    d.  Such other and further equitable relief as this court may deem just and proper.

II.    On Count Two, that this Court determine and declare that (a) payments made by TNEC's other primary and excess insurers for settlements of Asbestos Claims, when allocated *pro rata* according to Connecticut law, satisfied the Policy's requirement that $1,000,000 in ultimate net loss attributable to the Policy Period be paid before the Policy was triggered and (b) as of the date of the payment of that $1,000,000 by TNEC's other primary and excess insurers, Northbrook was obligated to pay its proportionate share of ultimate net loss incurred by TNEC in the Asbestos Claims up to the $5,000,000 aggregate limits of the Policy.

## JURY DEMAND

The Trustee demands a trial by jury on all issues so triable.

GEORGE I. ROUMELIOTIS, CHAPTER 7 TRUSTEE

By his counsel,

Taruna Garg (ct28652)
Marilyn B. Fagelson (ct17202)
Matthew A. Pesce (ct31208)
Harris Beach Murtha Cullina PLLC
107 Elm Street
Stamford, CT 06902
Telephone: (203) 653-5400
tgarg@harrisbeachmurtha.com
mfagelson@harrisbeachmurtha.com
mpesce@harrisbeachmurtha.com